UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

GENEVIEVE LUANA BOGGS,                    )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )          No. 2:21-CV-17-DCP
                                          )
KILOLO KIJAKAZI,[1]                       )
Acting Commissioner of Social Security,   )
                                          )

**<u>MEMORANDUM OPINION</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 18].  Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 21] and Defendant's Motion for Summary

Judgment [Doc. 25].  Genevieve Luana Boggs ("Plaintiff") seeks judicial review of the decision

of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

I.     **PROCEDURAL HISTORY**

On April 11, 2019, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that

began on January 5, 2015 [Tr. 15, 72, 177–78].  Plaintiff subsequently amended her alleged

disability onset date to October 18, 2016 [*Id.* at 35].  After her application was denied initially and

upon reconsideration, Plaintiff requested a hearing before an ALJ [*Id.* at 64–82, 101–02].  A

---

[1]      Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

telephonic hearing was held on June 10, 2020 [*Id.* at 34–55]. On June 22, 2020, the ALJ found

that Plaintiff was not disabled [*Id.* at 12–26]. The Appeals Council denied Plaintiff's request for

review on December 2, 2020 [*Id.* at 1–3], making the ALJ's decision the final decision of the

Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court

on January 28, 2021, seeking judicial review of the Commissioner's final decision under Section

405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions,

and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 18, 2016 through her date last insured of March 31, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis, degenerative disc disease, hernia, gout, anxiety, depression, and attention deficit disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she should avoid climbing ladders, ropes, and scaffolds, and she remains able to perform all other postural activities occasionally. The claimant is able to perform frequent handling and fingering, bilaterally. She should avoid concentrated exposure to vibrations and hazards. Mentally, the claimant is able

2

to perform simple, unskilled work limited to jobs with a specific vocational preparation (SVP) level of 1 or 2 and a reasoning level of 1, 2, or 3. The claimant remains able to have occasional public contact.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 25, 1975 and was 41 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 18, 2016, the alleged onset date, through March 31, 2017, the date last insured (20 CFR 404.1520(g)).

[Tr. 17–25].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

3

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed

4

waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

5

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the prior proceedings conducted through the SSA and the Appeals Council are invalid because the Commissioner of Social Security was not constitutionally appointed pursuant to *Seila Law L.L.C. v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). Plaintiff claims she is entitled to a new hearing before constitutionally appointed officers. Secondly, and in the alternative, Plaintiff argues the Commissioner's decision lacks the support of substantial evidence because the ALJ failed to follow the provisions of 20 C.F.R. § 404.1520 when both assessing the persuasiveness of the opinion by Plaintiff's treating physician, Liliana Murillo, M.D. ("Dr. Murillo") and considering the impact of Plaintiff's edema and her need to elevate her legs throughout a workday on her ability to do sustained work.[2] Plaintiff therefore requests that, in the event the Court finds the ALJ had

---

[2] As noted by the Commissioner, [Doc. 26 p. 2 n.1], Plaintiff's argument is limited to the ALJ's evaluation of her physical limitations; thus, the Court's analysis is similarly limited to issues

6

authority to make a determination, the Court order an immediate award of benefits based on the "overwhelming" medical evidence of record or otherwise remand this case for further proceedings.

The Commissioner argues that Plaintiff's separation-of-powers argument does not entitle her to a rehearing of her disability claim. In addition, the Commissioner maintains that substantial evidence supports the ALJ's evaluation of Plaintiff's physical RFC. The Commissioner therefore requests that the Court affirm her final decision. The Court finds Plaintiff is not entitled to a rehearing based on her separation-of-powers argument. The Court further finds the ALJ's decision—including his assessment of the persuasiveness of Dr. Murillo's opinion and his consideration of Plaintiff's edema—is supported by substantial evidence,

### A. Plaintiff's Request for Remand Based on Separation of Powers

Plaintiff first argues that the ALJ's decision denying her social security benefits is constitutionally invalid under separation of power principles. She argues 42 U.S.C. § 902(a)(3), which provides that "an individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office," is unconstitutional under *Seila Law LLC v. CFBP*, 140 S. Ct. 2183 (2020) [Doc. 22 p. 8]; that this unconstitutional removal provision renders the Commissioner's appointment—and all actions taken by the Commissioner during his appointment—unconstitutional [*Id.*]; and since the Commissioner's subordinates—including the ALJ and Appeals Council—served under authority delegated from the Commissioner, their appointments are also invalid and any decisions they

---

related to the ALJ's determination of Plaintiff's physical RFC.

7

rendered—including the ALJ's decision denying Plaintiff social security benefits—are invalid [*Id.* at 8–9].[3]

The Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) violates separation of powers principles to the extent it limits the President's authority to remove the Commissioner without cause [Doc. 26 p. 7 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021))]. The Commissioner disagrees, however, that the unconstitutional removal restriction invalidates the ALJ's decision denying Plaintiff's benefits. The Commissioner first argues there is no nexus between the improper removal restriction and Plaintiff's alleged harm because the ALJ who decided Plaintiff's case was validly appointed by an Acting Commissioner not subject to the unconstitutional removal restriction [*Id.* at 9–11]. The Commissioner then argues that, even setting aside the circumstances of the ALJ's appointment, Plaintiff cannot show the unconstitutional removal restriction inflicted compensable harm on her—as required by *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021)—because the restriction does not strip the Commissioner of his remaining authority [*Id.* at 11–15].[4]

---

[3] Plaintiff acknowledges that she did not raise this constitutional challenge at the lower administrative levels but notes that she was not required to do so before consideration by this Court [Doc. 22 p. 8–9 (citing *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. 2020) (holding that the Appointments Clause challenge did not have to be raised before the SSA and could be raised in the District Court); *Carr v. Saul*, 141 S. Ct. 1352, 1358–60 (2021) (finding that the Appointments Clause challenges do not have to be raised in the administrative proceedings but can be raised for the first time in the district court))].

[4] The Commissioner also asserts the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations [Doc. 26 pp. 15–18]. Because the Court finds Plaintiff has not suffered compensable harm, it declines to address these alternative arguments. *See Butcher v. Comm'r of Soc. Sec.,* No. 2:20-cv-6081, 2021 WL 6033683, at *8 (S.D. Ohio Dec. 21, 2021) (declining to reach similar arguments made by the Commissioner in light of holding on separation-of-powers claim), *report and recommendation adopted*, No. 2:20-cv-6081, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022).

### 1. The ALJ's Appointment was Ratified by an Acting Commissioner

As part of her argument, Plaintiff asserts the unconstitutional removal restriction rendered the ALJ's appointment invalid [Doc. 22 p. 8]. The Commissioner argues that the ALJ's appointment is valid regardless of the unconstitutional removal restriction because the ALJ was appointed by an Acting Commissioner who was not subject to the removal restriction [Doc. 26 pp. 9–11]. In support of this argument, the Commissioner relies on *Collins v. Yellen*, 141 S. Ct. 1761 (2021) [*Id.*]. In *Collins*, the Supreme Court distinguished between actions taken by an Acting Director and those taken by a confirmed Director. *Collins*, 141 S. Ct. at 1782–83, 1787. The Court found that any actions taken by an Acting Director could not result in compensable harm to a plaintiff because the removal restriction did not apply them. *Id.* Rather, the restriction only applied to confirmed Directors. *Id.* Thus, only actions taken by a confirmed Director could—at least potentially—cause a plaintiff compensable harm. *Id.* The Commissioner notes the ALJ in this case was appointed in July 2018 by then-Acting Commissioner Berryhill [Doc. 26 p. 9]. The Commissioner argues the ALJ was therefore properly appointed according to *Collins* [*Id.* at 9–11].

The Court finds the ALJ's appointment is constitutionally valid. The Court observes that Nancy A. Berryhill became the Acting Commissioner on January 23, 2017, *Geissler v. Berryhill*, No. 2:16-cv-06590, 2017 WL 3599193, at *1 n.1 (S.D.W.V. Aug. 21, 2017), and served until Andrew Saul was confirmed on June 17, 2019 [*Lisa D. v. Kijakazi*, No. 8:21CV294, 2020 WL 952778, at *6 (D. Neb. March 30, 2022)]. Saul then served as Commissioner until July 9, 2021, when President Biden appointed Kilolo Kijakazi as Acting Commissioner. *Id.* As the Commissioner notes, the ALJ was appointed in July 2018 during Acting Commissioner Berryhill's tenure. Since Acting Commissioner Berryhill was not subject to the unconstitutional removal

restriction, the removal restriction could not have impacted the constitutionality of the ALJ's appointment and the appointment is therefore valid.

The remaining question is what impact the Court's finding regarding the validity of the ALJ's appointment has on the ultimate issue of whether the ALJ's decision was valid in this case. The Commissioner argues that the fact that the ALJ was properly appointed resolves the dispute and defeats Plaintiff's argument for setting aside the agency action [Doc. 26 p. 9]. The Court, however, does not find that the fact that the ALJ was properly appointed resolves the dispute. As discussed above, *Collins* distinguishes between actions taken by an Acting Commissioner and those taken by a confirmed Commissioner. In this case, the ALJ rendered his decision on June 22, 2020 [*Id.*]. At that time, Andrew Saul was the confirmed Commissioner and he was subject to the improper removal restriction. The fact that the ALJ's decision was rendered during Saul's tenure leads this Court to believe there is at least a conceivable nexus between the ALJ's decision and the improper removal restriction, even if the ALJ was properly appointed. The Court therefore turns to the Commissioner's remaining argument.

### 2. Plaintiff Fails to Show that the Commissioner's Statutory Tenure Protection Resulted in Compensable Harm to Her

The Commissioner's second argument as to why the ALJ's decision was valid is that the unconstitutional removal restriction did not strip the Commissioner of his remaining authority and, therefore, the restriction could not have inflicted any compensable harm on Plaintiff as required by *Collins* [*Id.* at 11–15]. In *Collins*, the Supreme Court was first tasked with deciding whether 12 U.S.C. § 4512(a), (b)(2), which provided that the Director of the Federal Housing Finance Agency ("the FHFA")—an independent agency with a single Director—could only be removed "for cause," was unconstitutional in light of *Seila Law*. *See Collins*, 141 S. Ct. at 1770. The Court

found *Seila Law* was "all but dispositive" and rendered the for-cause restriction unconstitutional under separation of powers. *Id.* at 1783–87.

The Supreme Court then turned to the petitioners' argument that the unconstitutional restriction rendered an amendment adopted by the prior Acting Director of the FHFA and implemented by the confirmed Directors void. *See id.* at 1787–88. The Court first made the distinction discussed previously between actions taking by an Acting Director and confirmed Director, finding only those actions taken by a confirmed Director could create a plausible claim. *Id.* at 1782–83, 1787. The Court then went on to find that even for a confirmed Director, the unconstitutional removal restriction did not strip the Director of their remaining authority provided they "were properly *appointed*" because the improper removal restriction only "limited the President's authority to *remove* the confirmed Directors." *Id.* at 1787. Where the confirmed Director was properly appointed, there was "no reason to regard any of the actions taken by the FHFA in relation to the [] amendment as void." *Id.*

The Court cautioned, however, that it was "still possible for [the] unconstitutional provision to inflict compensable harm" even when the Director was properly appointed. *Id.* at 1789. The Court ultimately remanded the compensable-harm issue to the lower courts. *See id.* Before doing so, however, it noted scenarios in which it was possible that the unconstitutional for-cause provision could have resulted in compensable harm to a petitioner. *See id.* One example was if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal." *Id.* A second was if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* In these instances, "the statutory provision would clearly cause harm." *Id.*

11

In this case, Plaintiff relies only on the unconstitutional removal restriction. She does not cite any evidence President Biden unsuccessfully attempted to remove Commissioner Saul or had otherwise made a public statement expressing his desire to do so. The Court therefore finds Commissioner Saul retained the authority to exercise those powers inured to him by statute upon his appointment—including the power to decide social security benefits claims or delegate those decisions to subordinate officers—meaning Plaintiff suffered no compensable harm.

The Court's finding that Plaintiff suffered no compensable harm is further supported by the rationale espoused by Justice Kagan in her concurrence in *Collins*. In her concurrence, Justice Kagan first reiterated the test set forth by the majority, namely, that "[P]laintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision." *Collins*, 141 S. Ct. at 1801 (Kagan, J. concurring). Justice Kagan then added, "Granting relief in any other case would, contrary to usual remedial principles, put the plaintiffs 'in a better position' than if no constitutional violation had occurred." *Id.* (citations omitted). The Commissioner cites Justice Kagan's rationale and argues that providing Plaintiff her requested relief would "provide her an unwarranted remedial windfall" [Doc. 26 p. 13]. Specifically, "she should be awarded a rehearing for no reason other than Section 902(a)(3)'s existence, whether or not she can show that its restriction . . . had any effect on her benefits claim" [*Id.* at 14]. The Commissioner adds that, "[w]ere it otherwise," not only Plaintiff, but "thousands of other disappointed claimants" would also receive the windfall [*Id.*]. The Court agrees that granting Plaintiff her requested relief in this case because of the unconstitutional removal restriction would put her—and thousands of other

12

claimants—in a better position than if no constitutional violation had occurred at all. The Court

therefore finds Plaintiff's request for remand based upon separation of powers is without merit.[5]

## B. The ALJ's Determination of Plaintiff's Physical RFC

Plaintiff argues alternatively that the Commissioner's final decision is unsupported by

substantial evidence because the ALJ failed to abide by the provisions of 20 C.F.R. § 404.1520 in

calculating her RFC in that he did not properly evaluate the 2020 Medical Assessment completed

by Plaintiff's treating physician, Dr. Murillo, and failed to consider the impact of her edema on

---

[5]     The Court's decision falls in line with the numerous district courts, both in and out of this circuit, that have addressed similar claims raised by disability plaintiffs and that have reached a similar conclusion in rejecting requests for remand. *See, e.g.*, *Jeffrey G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-938, 2022 WL 1314433 (S.D. Ohio May 3, 2022); *Walker v. Comm'r of Soc. Sec.*, No. 4:20-CV-02506, 2022 WL 1266135 (N.D. Ohio Apr. 28, 2022); *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683 (S.D. Ohio Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-cv-6081, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022); *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-cv-726, 2021 WL 5917130 (S.D. Ohio Dec. 14, 2021), *report and recommendation adopted*, No. 2:21-cv-726, 2022 WL 219864 (S.D. Ohio Jan. 25, 2022); *Miley v. Comm'r of Soc. Sec.*, No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi*, No. 20-518, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021); *see also, e.g.*, *Jean P. v. Kijakazi*, No 8:21-CV-200, 2022 WL 1505797 (D. Neb. May 12, 2022); *Numan v. Saul*, No. 20-CV-1978, 2022 WL 891111 (S.D. Cal. Mar. 24, 2022); *Lisa Y. v. Comm'r of Soc. Sec.*, No C21-5207, 2021 WL 5177363 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397 (W.D. N.C. Oct. 27, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630, 2021 WL 5634177 (S.D. Cal. Dec. 1, 2021), *report and recommendation adopted*, No. 3:20cv1630, 2022 WL 970741 (S.D. Cal. Mar. 31, 2022).

Some of these courts have denied plaintiffs' claims for additional reasons, including under the doctrine of severability. *Jeffrey G.*, 2022 WL 1314433, at *5 (citing *Butcher*, 2021 WL 6033683, at *7). Those courts have found that, if § 902(a)(3)'s removal provision is stricken, the SSA would remain fully functional. *Id.*; *see also Butcher*, 2021 WL 6033683 at *7 (citing *Alice A. v. Comm'r of Soc. Sec.*, No. C20-5756, 2021 WL 5514434, at *6 (W.D. Wash. Nov. 24, 2021)) and finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional, it was severable from the remainder of the statutes governing the SSA); *Shaun A. v. Comm'r of Soc. Sec.*, No. C21-5003, 2021 WL 5446878, at *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v. Comm'r of Soc. Sec.*, No. C20-6176, 2021 WL 5356719, at *8 (W.D. Wash. Nov. 16, 2021) (same). Given the parties' arguments in this case and the Court's findings, the Court need not address the severability argument here.

her ability to do sustained work. The Commissioner frames Plaintiff's arguments as essentially a disagreement with the ALJ's evaluation of the evidence and argues that Plaintiff has failed to demonstrate that any reasonable factfinder would have been compelled to assess greater limitations than what was provided by the ALJ in the final RFC finding. For the reasons below, the Court finds the ALJ's formulation of Plaintiff's RFC conformed to the relevant SSA requirements and is supported by substantial evidence.

### 1. Dr. Murillo's 2020 Medical Assessment

Plaintiff argues the ALJ did not give proper weight to Dr. Murillo's 2020 Medical Assessment in determining Plaintiff's RFC [Doc. 22 pp. 11–13]. Dr. Murillo began treating Plaintiff at least as early as February of 2015 [Tr. 326]. Between February 2015 and Plaintiff's date last insured of March 31, 2017, Plaintiff visited Dr. Murillo eight times [Doc. 22 p. 12]. Thereafter, Plaintiff continued to see Dr. Murillo [*Id.*; Tr. 376, 397, 412, 434, 449]. On May 26, 2020, Dr. Murillo completed a two-page Medical Assessment Form [Tr. 1239–40] and a two-page Mental Residual Functional Capacity Assessment [*Id.* at 1241–43]. As noted by the ALJ, Dr. Murillo opined in her reports that claimant: "was able to perform frequent reaching, handling, and fingering"; "was able to stand and/or walk for less than two hours in an eight-hour workday, and she should avoid stairs"; "would be off task for 15% or more of the workday"; "needs to elevate her legs"; "is able to perform frequent pushing and pulling, and . . . is able to lift and carry five pounds or less"; "had moderate to marked limitations in understanding and memory, in concentration and persistence, and in adaptation"; "has mild to moderate limitations in social interaction"; and was "likely to miss two or more days per month" [*Id.* at 23 (citing *id.* at 1239–43)]. The ALJ founds these "opinions of Dr. Murillo to be unpersuasive" because:

> [H]er opinions were rendered more than three years after the claimant's date last insured, and although Dr. Murillo treated the claimant during the relevant period,

14

she did not indicate that her opinions were intended to evaluate the claimant's functioning prior to March 2017. Moreover, her opinion is rendered in the form of check marks, and she provides no explanation for the limitations she opined. Likewise, her opinion is not supported by her observations during the relevant period. For example, her opinion that the claimant has moderate to marked limitations in understanding, memory, concentration, and persistence, is not supported by her own observations that the claimant had normal speech, behavior, judgment, thought content, cognition, and memory. Finally, Dr. Murillo's opinion is inconsistent with the opinion of Ms. Johnston and with the overall evidence of record.

[*Id.* at 23–24].

The Court finds the ALJ followed the proper legal framework in determining the persuasiveness of Dr. Murillo's opinion and that this determination is supported by substantial evidence. The Court notes that because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's ("SSA") revised regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's

policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)–(5). Of these, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

The Court finds the ALJ adequately articulated how he considered the required § 404.1520c factor of supportability when evaluating Dr. Murillo's opinion. The ALJ considered that Dr. Murillo's opinion came in the form of a checkbox form with no supplemental explanations for the assessed limitations. *See* 20 C.F.R. § 404.1520c(c)(1) (stating that the more supporting explanations a medical source provides for her opinion, the more persuasive that opinion will be). Plaintiff takes issue with the ALJ critiquing Dr. Murillo's opinion on that basis [Doc. 22 p. 13 (citing Tr. 23–24)], arguing that the ALJ failed to consider the "wording of each of the questions[,]" which Plaintiff contends "contain the presumed diagnosis" [*Id.*]. This argument is unavailing, as "[m]any courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings.'" *Robinson v. Comm'r of Soc. Sec.*, No. 4:19-cv-267, 2020 WL 947654, at *4 (N.D. Ohio Feb. 27, 2020) (quoting *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016)); *see also Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-95, 2020 WL 6073766, at *3 (S.D. Ohio Oct. 15, 2020) ("Courts have upheld the decision of an ALJ to assign little weight to an opinion from a treating source on a checkbox from where . . . the physician provided little or no explanation for the restrictions and cited no supporting medical evidence.") (citing *Ellars*). It was therefore appropriate for the ALJ to discredit Dr. Murillo's opinion based on it being rendered in the form of check marks with no explanation for the opined limitations.

The ALJ also found that Dr. Murillo's May 2020 opinion was unsupported by her own observations during the relevant period under adjudication. Notably, Dr. Murillo saw Plaintiff

16

only once during the relevant five-month period—on October 18, 2016 (Plaintiff's alleged disability onset date)—with that appointment mostly concerning a weight check and mental health concerns [Tr. 314–24, 481–87]. On examination that date, Plaintiff displayed decreased ranges of motion in her low back; had present, but improving, edema; and Plaintiff was in no distress with normal reflexes, normal muscle tone, and normal coordination [*Id.* at 317–18]. With respect to Plaintiff's symptoms of pain, Dr. Murillo recommended only weight loss and exercise [*Id.* at 323].

Finally, the ALJ noted that Dr. Murillo failed to indicate that her opinions were intended to evaluate Plaintiff's degree of functioning prior to her date last insured of March 31, 2017. Binding precedent recognizes that opinion evidence postdating the date last insured is relevant only to the extent it relates back to the claimant's condition on or before the last insured date. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020). And an opinion that doesn't relate back to the period under adjudication need not be assigned *any* weight. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013).

Plaintiff argues that the ALJ improperly rejected Dr. Murillo's opinion based partially on the fact that it was provided three years after the date last insured because, even though that may have been the case, she had a prior treatment relationship with Plaintiff [Doc. 22 p. 12]. Plaintiff says that Dr. Murillo's opinion indicates she treated and diagnosed her with bilateral knee pain, neuropathy, and edema since October 2016, and it can therefore be inferred that her opinion addresses the relevant period [*Id.* (citing Tr. 23, 1239)].[6] Plaintiff argues that, if it was unclear

---

[6] The Court finds little merit in Plaintiff's assertion that it can be inferred that Dr. Murillo's opinion addressed the relevant period because it indicated she had treated and diagnosed Plaintiff with knee issues and edema since October 2016. This finding was incorporated into the checkbox question on the form through which Dr. Murillo issued her opinion, and the Court has already determined that the ALJ appropriately discounted Dr. Murillo's opinion because it was issued in this manner.

17

whether the opinion addressed the relevant period, the ALJ was required to determine the applicable timeframe of Dr. Murillo's opinion through further inquiry. She contends that the ALJ had the opportunity and responsibility to make such an inquiry and that he could have done so by, for example, calling Dr. Murillo, sending interrogatories to her to clarify, or affording Plaintiff additional time to address this question.

It is true that, "[i]n some cases, the gap in time between the opinion and the date last insured will not undermine the relevance of the physician's opinion[,]" such as when the physician had a prior treatment relationship with the claimant that preceded the expiration of the date last insured. *Rainey v. Comm'r of Soc. Sec.*, No. 4:21-cv-01135, 2022 WL 1541913, at *9 (N.D. Ohio Apr. 29, 2022), *report and recommendation adopted sub nom.*, *Rainey v. Kijakazi*, No. 4:21cv1335, 2022 WL 1539265 (N.D. Ohio May 16, 2022) (citing *Sito v. Comm'r of Soc. Sec.*, F. Supp. 3d 633, 647 (N.D. Ohio 2017)). While Plaintiff maintains that the ALJ rejected Dr. Murillo's opinion on the basis that it was provided three years after the date last insured and that the ALJ had a duty to further inquire from Dr. Murillo as to the applicability of the time, the Court disagrees.

Here, the Court finds the ALJ was under no duty to recontact Dr. Murillo. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." *Wormwood v. Astrue*, No. 1:08-cv-60, 2009 WL 77381, at *11 (E.D. Tenn. Jan. 8, 2009) (quoting *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001)). In fact, the regulations expressly permit the ALJ to determine the best way to resolve inconsistencies and insufficiencies in the record, including that the ALJ *may*—but is not required to—recontact a medical source, request additional existing evidence, ask the claimant to undergo a consultative examination at the agency's expense, or ask the claimant or others for more information. *See* 20

C.F.R. § 404.1520b(b)(2). And even where the record is sufficient but is still inconsistent, the ALJ may still make a determination based on the available evidence if he or she is able to do so. *Id.* § 404.1520b(b)(1).

In this case, the ALJ reasonably found that the evidence of record was sufficient to issue a determination regarding Plaintiff's work-related abilities [Tr. 20–24]. Moreover, the ALJ did not reject Dr. Murillo's opinion solely because it was issued after the expiration of Plaintiff's insured status in March 2017. The ALJ discredited Dr. Murillo's opinion for many other reasons, including that it was issued via a check-box form that included no explanations for her opined limitations, that it was not supported by her own observations from the relevant period, and that her opinion was inconsistent with Ms. Johnston's opinion and with the overall evidence of record [*Id.* at 23–24]. It is clear from the ALJ's decision, which provided an extensive discussion of Dr. Murillo's opinion, that the "overarching issue with [Dr. Murillo's opinion] is the lack of support in the record." *See Gearing v. Comm'r of Soc. Sec.*, 417 F. Supp. 3d 928, 947 (N.D. Ohio Oct. 24, 2019).

The Court finds the ALJ also adequately articulated how he considered the required § 404.1520c factor of consistency when evaluating Dr. Murillo's opinion. The ALJ found that Dr. Murillo's opinion was inconsistent with the opinion of Ms. Johnston and with the overall evidence of record [Tr. at 24, 507]. The ALJ noted that in May 2019, Ms. Johnston issued a letter noting that Plaintiff had been a patient of the Suboxone clinic since January 2018 and opining that Plaintiff was able to perform work activities without restriction, including sitting, standing, walking, lifting, carrying, and handling objects [*Id.* at 23, 507]. While the ALJ ultimately found Ms. Johnston's opinion "unpersuasive in determining [Plaintiff's] functioning during the adjudicative period" [*Id.* at 23], as evidenced by the ALJ's finding that Plaintiff was restricted to sedentary exertional work

19

[*Id.* at 20, 23], the ALJ nonetheless referenced Ms. Johnston's opinion in his observation of inconsistencies with Dr. Murillo's severely restrictive limitations appearing in the record.

The Court finds it was logical and appropriate for the ALJ to use Ms. Johnston's opinion, which suggested Plaintiff required almost no limitations, to discredit the extreme limitations from Dr. Murillo's opinion, even though the ALJ found neither opinion to be persuasive. As previously stated, it is the ALJ's obligation to resolve inconsistencies like this in the record, and he is given considerable discretion to do so. *See* 20 C.F.R. § 404.1520b. Moreover, Plaintiff does not appear to argue that it was improper for the ALJ to rely on Ms. Johnston's opinion in this manner. In fact, the Court notes that Plaintiff does not specifically mention Ms. Johnston's opinion in her brief, and reiterates that the Court is not obligated to scour the record for errors not identified by the claimant. *See McPherson*, 125 F.3d at 995–96.

The ALJ also found that Dr. Murillo's opinion was inconsistent with the other evidence in the record. For example, treatment records from August 2016—only two months prior to Plaintiff's alleged disability onset date—indicated that although Plaintiff had decreased range of motion in her lumbar spine, she had otherwise normal musculoskeletal examination findings, and she even told Dr. Murillo that her edema was "doing good" on prescribed medication [*Id.* at 21, 23, 303, 306–07].

For the foregoing reasons, the Court finds the ALJ's evaluation of Dr. Murillo's opinion was appropriate, as he articulated how he considered the supportability and consistency factors as required, and his evaluation is otherwise supported by substantial evidence. Although Plaintiff would interpret the evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley*, 581 F.3d at 407 (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way"

and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Furthermore, it appears that Plaintiff is inviting the reweighing of the evidence in this case, and "the court will not reweigh the evidence considered by the ALJ." *Seibert v. Comm'r of Soc. Sec.*, No. 17-13590, 2019 WL 1147066, at *2 (E.D. Mich. Mar. 13, 2019) (citing *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *See Buxton*, 246 F.3d at 772.

### 2.    The Impact of Plaintiff's Edema on Her RFC

Plaintiff also argues the ALJ failed to abide by the provisions of § 404.1520 when calculating her RFC because he ignored Plaintiff's testimony and the medical evidence of her continued complaints of severe edema and the need for her to lie down to elevate her legs [Doc. 22 p. 10]. Plaintiff adds that although the ALJ acknowledged her testimony regarding the edema, he never mentions the impact of the edema on her ability to work when determining her RFC [*Id.* at 11]. The Commissioner argues the ALJ properly considered the entire record in determining Plaintiff's RFC, including Plaintiff's testimony and the relevant medical evidence [Doc. 26 p. 19]. The Court finds the ALJ did not err in determining Plaintiff's RFC because the ALJ properly considered all relevant evidence in making his determination.

20 C.F.R. § 404.1520(e) requires an ALJ to consider "all the relevant medical and other evidence" in determining a plaintiff's RFC. Section 404.1545(a)(3) clarifies that "relevant medical

and other evidence" includes "any statements about what [a claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations" as well as "descriptions and observations of [claimant's] limitations from [their] impairment(s), including limitations that result from symptoms, such as pain, provided by [the claimant] . . . ." Section 404.1529, in turn, dictates how the ALJ is to evaluate a claimant's symptoms, including pain. Section 404.1529(b) requires an ALJ to first determine whether the medical signs or laboratory findings indicate the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. Section 404.1529(c) then requires the ALJ to evaluate the intensity and persistence of the claimant's symptoms to determine how these symptoms limit the claimant's capacity for work.[7] In evaluating the intensity and persistence of a claimant's symptoms, the ALJ is to consider the objective medical evidence, all information that a claimant's medical sources and nonmedical sources provide about the claimant's pain or other symptoms—including a claimant's own statements regarding their pain and symptoms, and other relevant factors including:

> (i)  the claimant's daily activities;
>
> (ii)  the location, duration, frequency, and intensity of the pain or other symptoms;

---

[7] The Sixth Circuit has described this process as follows,

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)).

(iii)   precipitating and aggravating factors;

(iv)   the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;

(v)   treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;

(vi)   any measures the claimant takes or has taken to relieve the pain or other symptoms; and

(vii)   other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529.[8]

In considering a claimant's statements regarding the intensity, persistence, and limiting effects of their symptoms, the ALJ is to evaluate the statements in relation to the other evidence and determine whether there are any inconsistencies because a claimant's "symptoms, including pain, will be determined to diminish [their] capacity for basic work activities to the extent that [their] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). The SSA has clarified that in evaluating the consistency of a claimant's statements regarding their pain and other symptoms, they "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." Social Security Ruling 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective Mar. 28, 2016). The SSA has also stated "that subjective symptom evaluation is not an examination of an individual's character . . . ." *Id.*; *see Davis v. Comm'r of Soc. Sec. Admin.*, No.

---

[8]   The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

23

3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020) ) (discussing SSR 16-3p), *report and recommendation adopted sub nom.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020).

Once an ALJ has made a determination as to the credibility of a claimant's statements regarding their symptoms, that determination is afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022) ) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)), *report and recommendation adopted*, No. 1:20-cv-00064, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022).  Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In this case, Plaintiff claims the ALJ erred in calculating her RFC because he ignored her testimony and the relevant medical evidence regarding her severe edema and her need to lie down to elevate her legs to get relief [Doc. 22 p. 10].  The Court notes the only relevant medical evidence Plaintiff cites to other than her own testimony is the opinion of Dr. Murillo in her 2020 Medical

24

Assessment.  As discussed above, the ALJ did consider Dr. Murillo's Assessment but found it to be unpersuasive—a conclusion that this Court finds is supported by substantial evidence.  This leaves only Plaintiff's own testimony.  Plaintiff argues that although the ALJ acknowledges her testimony, he erred in that he never mentions the impact of the edema on her ability to work when determining her RFC [Doc. 22 p.11].  Contrary to Plaintiff's assertions, the ALJ did not ignore Plaintiff's testimony or otherwise fail to consider the impact of her edema on her ability to work.  Rather, the ALJ considered Plaintiff's testimony but found her statements to be inconsistent with the other medical evidence in the record.

Specifically, the ALJ began the relevant portion of his decision by stating he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" [Tr. 20].  The ALJ then noted claimant's testimony regarding the edema:

> At the hearing, the claimant testified that between the alleged onset date and the date last insured, she was limited by swelling in her legs, ankles, feet, and knees.  She stated that she had pain in her lower extremities.  She also reported that she experienced neuropathy, and she was not able to spend prolonged period o[n] her feet.  She alleged that she needed to lie down and elevate her legs to reduce swelling.

[*Id.*].  The ALJ then found that:

> claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Tr. 21].  As it relates to Plaintiff's edema, specifically, the ALJ noted that Plaintiff "told her primary care provider that her edema was 'doing good'" back in August 2016 [*Id.* at 21].  The ALJ also noted that "[Plaintiff's] provider documented normal coordination and no edema or tenderness

on examination" [*Id.* at 22].  Even so, the ALJ reduced Plaintiff's RFC to "sedentary exertional level" based on Plaintiff's assertion that "she is not able to stand or walk for prolonged periods or lift in excess of five to ten pounds" [*Id.* at 22].  Finally, towards the end of the relevant portion of his decision, the ALJ noted he had "considered all of the evidence, including the claimant's testimony and evidence of subsequent medical treatment, in finding the claimant['s] . . . residual functional capacity" [*Id.* at 24].

This Court finds the ALJ did consider Plaintiff's testimony regarding her edema but found it to be inconsistent with the remaining relevant medical evidence.  As discussed above, it is an ALJ's duty to compare a claimant's statements about the severity of their symptoms to the relevant medical evidence and determine their consistency.  *See* SSR 16-3p ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with the objective medical evidence and the other evidence."); *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").  The ALJ's determination is afforded "great weight and deference" and this court is "limited to evaluating whether . . . the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record."  *Schmiedebusch*, 536 F. App'x at 649.  Here, the ALJ cites to both Plaintiff's prior statements to her doctor in 2016 that her edema was "doing good" and Dr. Murillo's note that Plaintiff had "no edema or tenderness on examination."  The Court finds the ALJ's determination is therefore reasonable and supported by substantial evidence in the record.

Since the ALJ found Plaintiff's testimony was inconsistent with the remaining evidence, he was not required to reduce Plaintiff's RFC because of the testimony.  *See* 20 C.F.R. § 404.1529

(c)(4) ("[A claimant's] symptoms, including pain, will be determined to diminish [their] capacity for basic work activities to the extent that [their] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.").  Even so,  the ALJ specifically accounted for Plaintiff's edema in this case by limiting her to sedentary work which involving no more than two hours standing or walking in an eight-hour workday [Tr. 20, 22].

For these reasons, the Court finds the ALJ appropriately considered all relevant evidence, including Plaintiff's subjective allegations of disabling impairments related to her edema.  Plaintiff is not entitled to remand on this issue.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 21**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 25**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

27